**2122-CC00357**

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

| | |
|---|---|
| LEGACY BUILDING GROUP, LLC, | ) |
| | ) |
| and | ) |
| | ) |
| C. RALLO LEGACY, | )   Case No.: _____-_____ |
| | )   Div. ___ |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| LIBERTY MUTUAL FIRE INSURANCE | ) |
| COMPANY, | ) |
| 175 Berkeley Street, Boston, MA 02117 | ) |
| **Serve at:** | ) |
| Director of Insurance | ) |
| 301 W. High Street, Room 530 | ) |
| Jefferson City, MO 65101 | ) |
| | ) |
| and | ) |
| | ) |
| LIBERTY INSURANCE CORPORATION, | ) |
| 175 Berkeley Street, Boston, MA 02117 | ) |
| **Serve at:** | ) |
| Director of Insurance | ) |
| 301 W. High Street, Room 530 | ) |
| Jefferson City, MO 65101 | ) |
| | ) |
| and | ) |
| | ) |
| S.M. WILSON & CO., | ) |
| Serve at: | ) |
| 2185 Hampton Avenue | ) |
| St. Louis, Missouri 63139 | ) |
| | ) |
| *Defendants.* | ) |

---

### PETITION FOR DAMAGES

COME NOW Plaintiffs Legacy Building Group, LLC and C. Rallo Legacy, through counsel

and pursuant to Mo. R. Civ. P. 52.01 and 55.01, and for their Petition for Damages against Liberty

1



Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

Mutual Fire Insurance Company, Liberty Insurance Corporation, and S.M. Wilson & Co., state and allege:

## PARTIES, JURISDICTION, AND VENUE

1.      Legacy Building Group, LLC ("Legacy"), which has a principal office at 1530 S. Second Street, St. Louis, Missouri, is and was at all times relevant to this action, a limited liability company organized under the laws of and authorized to do business in the State of Missouri.

2.      Todd Weaver is and was at all times relevant to this action, the sole member, owner, and manager of Legacy and he resides in the State of Missouri.

3.       C. Rallo Legacy ("Joint Venture") is and was at all times relevant to this action, a Joint Venture organized between Legacy and C. Rallo Contracting Co., Inc.

4.      C. Rallo Contracting Co., Inc., which has a principal office at 5000 Kemper Avenue, St. Louis, Missouri 63139, is and was at all times relevant to this action a company incorporated under the laws of and authorized to do business in the State of Missouri.

5.      Liberty Mutual Fire Insurance Company ("Liberty Mutual"), which has a principal office at 175 Berkeley Street, Boston, Massachusetts 02117, is and was at all times relevant to this action a company incorporated under the laws of Wisconsin and authorized to do business in the State of Missouri.

6.      Liberty Insurance Corporation ("Liberty"), which has a principal office at 175 Berkeley Street, Boston, Massachusetts 02117, is and was at all times relevant to this action a company incorporated under the laws of Massachusetts and authorized to do business in the State of Missouri.

7.      S.M. Wilson & Co. ("S.M. Wilson"), which has a principal office at 2185 Hampton Avenue, St. Louis, Missouri 63139, is and was at all times relevant to this action a company incorporated under the laws of and authorized to do business in the State of Missouri.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

8.      The Court has jurisdiction over this Petition for Damages and the causes of action set forth herein pursuant to Article V, Section 14(a) of the Missouri Constitution and Sections 478.070 and 506.500.1(1) – (5) RSMo.

9.      Venue is proper in this Court pursuant to Sections 508.010.4 RSMo.

### GENERAL ALLEGATIONS

### A.      *THE CONSTRUCTION PROJECT*

10.      In 2013, S.M. Wilson contracted with property owner, City Walk on Euclid, LLC (the "Prime Contract"), to perform general contractor services in connection with construction of the City Walk on Euclid (the "Project") located at 100 Euclid, St. Louis, Missouri 63108.

11.      On June 4, 2013, C. Rallo Contracting Co., Inc. and Legacy formed a Joint Venture titled C. Rallo Legacy for the submission of a bid for the Project.

12.      On January 8, 2014, the Joint Venture subcontracted with Legacy for the installation of a shoring system on the Project.

13.      On February 12, 2014, S.M. Wilson accepted the Joint Venture's bid and formally entered into a subcontract with the Joint Venture.

14.      The scope of work of the subcontract between S.M. Wilson and the Joint Venture was to provide "all necessary manpower, equipment, materials, and incidental items to complete the Shoring scope of work" and the contract itemized 42 specific tasks to be performed by the Joint Venture.

15.      The Joint Venture subcontract specified that it included and incorporated within its terms the Prime Contract between S.M. Wilson and the owner.

16.      Included within the Joint Venture's tasks was the provision of a "soil nail" shoring system designed by Helitech at the north side of the project and the provision of 160-feet of conventional shoring along the southwest corner of the project.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

17.     The Joint Venture subcontracted with Legacy for the performance of the north side Helitech soil nail shoring system and the southwest conventional shoring system.

18.      Legacy's subcontract with the Joint Venture specified that it included and incorporated within its terms the Prime Contract between S.M. Wilson and the owner.

19.     Legacy agreed in the subcontract with the Joint Venture to provide all labor, materials, tools, equipment, engineering, and insurance to perform the "shoring and bank stabilization" scopes.

20.     On January 21, 2014, Legacy subcontracted with Helitech for its engineering and construction of the north soil nail shoring system and southwest conventional shoring system.

21.     Each of the Joint Venture, Legacy, and Helitech subcontract incorporated the Prime Contract within their terms and each subcontract specified that the "Subcontract Documents" included the Prime Contract and other documents enumerated therein and all modifications to the Prime Contract, whether issued before or after the respective subcontractors' execution of their subcontracts.

22.     Article 8 of the Helitech subcontract stated that Helitech's shoring work was to be performed as "described in the Subcontract Documents" – which included the Prime Contract – and further itemized specific tasks to be performed, including the engineering and construction of a shoring support system on the Citywalk project, consisting of a soil nail wall with underpinning.

23.     Pursuant to Article 13.1 of the Helitech subcontract, Helitech agreed to purchase and maintain insurance.

24.     Pursuant to Article 13.3 of the Helitech subcontract, Helitech agreed to file certificates of insurance acceptable to Legacy.

25.     Pursuant to Article 13.4 of the Helitech subcontract, Helitech agreed to cause the commercial liability coverage required by the subcontract to include Legacy, S.M. Wilson, and/or the

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

Joint Venture, as additional insureds and to afford coverage for these "additional insureds" for "claims caused in whole or in part by Helitech's negligent acts or omissions during the Subcontractor's operations and completed operations."

26.     The Helitech subcontract further required Helitech:

*"To the fullest extent permitted by law, [Helitech] shall indemnify and hold harmless the Owner, [Legacy, the Joint Venture, and S.M. Wilson] . . . and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of [Helitech's] Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in party by a party indemnified hereunder. . . ."*

27.     Although the required insurance types and limits of liability were mistakenly or inadvertently left blank in the Helitech subcontract, the Helitech subcontract incorporated by reference the terms and provisions of the Prime Contract, and Helitech provided to Legacy an acceptable Certificate of Liability Insurance prior to commencing work on the Project, as required by the Helitech subcontract.

28.     The Prime Contract and the Joint Venture subcontract required the Joint Venture, its subcontractor (Legacy), and its sub-sub-contractor (Helitech) to obtain commercial general liability coverage with a primary limit "not less than" $1 million, and excess limit "not less than" $2 million and further required that each primary and excess policy name S.M. Wilson as an additional insured and provide "that it is primary to any other insurance maintained by any additional insured, which insurance shall be excess or contingent."

29.     The Certificate of Liability Insurance provided by Helitech to Legacy  identified certificate holders "Legacy Buildign [sic] Group/Legacy Building group [sic] Joint Venture" and stated: "Legacy Building gorup [sic], Legacy Building Group Joint Venture, and S M Wilson and Co . . . and C Rallo are additional insureds as their interst [sic] may appear" on the Liberty Policy and Helitech's umbrella policy issued by Liberty.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

30.     The Certificate of Liability Insurance provided by Helitech to Legacy identified commercial general liability coverage limits of $1,000,000 (primary) and $10,000,000 (umbrella).

31.     Helitech engineered and constructed a soil retention system on the Project in 2014.

32.     The Helitech subcontract called for payment to Helitech in the amount of $570,960.00, Helitech was paid in full for its work on the Project, and Legacy fulfilled all other duties and obligations owed to Helitech under the subcontract.

**B.      _THE INSURANCE POLICIES_**

33.     Liberty Mutual insured "named insured" "Slab Masters Inc Helitech" with a primary limit of commercial general liability coverage of $1,000,000 under Policy No. TB2-Z91-458715-014 for the relevant policy period 02/27/2014 – 02/27/2015 (the "Liberty Mutual Policy").

34.     Liberty insured "named insured" "Slab Masters, Inc." with an excess limit of commercial general liability coverage of $5,000,000 under Policy No. THZ-Z91-458715-074 for the relevant policy period 02/27/2014 – 02/27/2015 (the "Liberty Mutual Policy") (both primary and umbrella policies collective referenced as the "Liberty Policies").

35.     The Liberty Mutual Policy defined "insured" as follows:

…
*e. Additional Insured by Written Contract or Written Agreement.*
*The following are insureds under the policy when you have agreed in a written contract or written agreement to provide them coverage as additional insureds under your policy:*
*. . . .*
*(4)      Owners, Lessees or Contractors: any person(s) or organization(s) to whom you are obligated by a written agreement to procure additional insured coverage, but only with respect to liability for . . . "property damage" . . . caused, in whole or in part, by your acts or omissions or the acts or omissions of your "employees", your agents, or your subcontractors, in the performance of your ongoing operations.*

36.     The Liberty Policy defined "insured" as follows:
…
*e.  Any person or organization included as an additional insured under "underlying insurance", but not for broader coverage than is provided by the "underlying insurance".*

6

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

37.     The Helitech subcontract is a written contract within which Helitech agreed to provide primary and umbrella insurance coverage to Legacy, the Joint Venture, and S.M. Wilson.

38.     At all times relevant to the causes of action set forth herein, Liberty Mutual and Liberty (hereinafter collectively "Liberty") refused to provide coverage for and/or to defend and indemnify any of the foregoing entities.

39.     Both Liberty Policies provide "Supplementary Payments" coverage for "Prejudgment interest", and this coverage obligation is not limited by and is separate and apart from the $1,000,000 limit of primary liability coverage under the Policy.

## C.     THE DISPUTE

40.     At some point during the construction of the Project, the owner (Loop Lofts) of the Project's adjacent property (Carleton Apartments) claimed that settling, shifting, and cracking had been caused by the defective construction of the "soil nail" shoring system on the Project.

41.     In October 2014, sewage backed-up into the Carleton building's elevator pit and basement.

42.     In January 2015, excavation of the sewer line revealed grout and a soil nail anchor.

43.     On August 12, 2015, S.M. Wilson entered into a Resolution Agreement with Loop Lofts pursuant to which S.M. Wilson agreed to pay for certain expenses incurred by Loop Lofts and to complete certain repairs to the Carleton Building resulting from the defective shoring system.

44.     On June 21, 2018, S.M. Wilson sent a settlement demand letter to "C. Rallo Contracting Co., Inc. doing business as C. Rallo Legacy" and a draft petition, demanding $1,459,106.42, "a 10% discount" of the alleged total damages of $1,621,229.36 to settle its claim.

45.     On July 13, 2018, counsel for the Joint Venture and Legacy sent the settlement demand to Helitech and Liberty and tendered the Joint Venture and Legacy's defense and indemnity.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

46.     Neither Helitech nor Liberty responded to this July 13, 2018 correspondence.

47.     On August 21, 2018, counsel for the Joint Venture and Legacy sent the demand again, along with the message:

> "I have tendered this matter to both Helitech and Liberty Mutual pursuant to the indemnity agreement in the contract and the policy of insurance listing my client's [sic] as insured on three separate occasions.  I have yet to receive a response to this tender.  Please acknowledge your acceptance of the tender of both defense and indemnity so that I can respond to [S.M. Wilson] by August 24, 2018."

48.     Neither Helitech nor Liberty responded to this August 21, 2018 correspondence.

49.     On December 6, 2018, counsel for the Joint Venture and Legacy sent yet another letter to Helitech and Liberty, stating he had "received no response whatsoever from" Helitech or Liberty regarding the July 13, 2018 letter, that S.M. Wilson intends to file suit by December 31, 2018, and that under Missouri law, Liberty provides primary insurance coverage for S.M. Wilson's claim.

50.     On January 18, 2019, Liberty sent a letter to the Joint Venture and Legacy's counsel confirming receipt of each of the July 13, August 2, and December 6, 2018 letters and confirming that the "parties seeking coverage" were "Legacy Building Group, LLC, C. Rallo Legacy, and C. Rallo Contracting Co., Inc."

51.     In the January 18, 2019 letter, Liberty communicated it was "investigating and evaluating [the] tender and will provide [its] formal response within forty five days."

52.     Liberty did not provide a response within 45 days.

53.     On June 10, 2019, S.M. Wilson issued to the Joint Venture and Legacy a time-limited settlement demand of $1,621,229.36 with a deadline of June 24, 2019 which, by agreement, was extended to July 1, 2019.

54.     Between June 10 and July 1, 2019, the Joint Venture and Legacy made numerous efforts to engage Helitech and Liberty to negotiate resolution of the demand, but Helitech and Liberty refused to engage in and/or discuss settlement.

55.     On August 13, 2019, S.M. Wilson sent another time-limited settlement demand to the Joint Venture and Legacy, this time demanding $3 million.

56.     S.M. Wilson's August 13 demand itemized "direct damages in the amount of $1,621,229.36," "attorneys' fees . . . in excess of $500,000," and interest "at the rate of $523.04 per day . . . in excess of $980,000." S.M. Wilson agreed to extend the response deadline to October 12, 2019.

57.     On September 3, 2019, the Joint Venture and Legacy sent Liberty a letter following-up on "the previous demands that Liberty Mutual participate in the settlement of claims made on behalf of SM Wilson."

58.     In the September 3 letter, the Joint Venture and Legacy "included several prior notifications to Helitech/Liberty Mutual along with [Liberty's] January 18, 2019 [letter] acknowledging receipt of the demand and advising a response would come within 45 days"; the Joint Venture and Legacy reiterated their "demand that Liberty Mutual provide a response and resolve all claims made on behalf of SM Wilson" against the Joint Venture and Legacy.

59.     On September 19, 2019, the Joint Venture and Legacy sent a letter by certified mail to Liberty in which these entities demanded defense and indemnification from Liberty for S.M. Wilson's claim, stating: "Liberty Mutual has long been on notice of this claim and has had years to investigate this matter, assess liability and damages, and evaluate its coverage position with respect to this claim." The Joint Venture and Legacy left the demand open until October 1, 2019.

60.     On September 25, 2019, the Joint Venture and Legacy forwarded to Liberty a copy of S.M. Wilson's August 13, 2019 demand letter, the S.M. Wilson Contract, and the Resolution Agreement between S.M. Wilson and Loop Lofts.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

61.     In a letter dated September 30, 2019 and addressed to "C. Rallo / Legacy Joint Venture," Liberty stated its unsupported position that it did not have sufficient information to respond to S.M. Wilson's August 13, 2019 settlement demand by October 1, 2019.

62.     At the time of the September 30, 2019 letter, Liberty had been on notice of the claim for coverage and defense/indemnity since July 13, 2018.

63.     On January 29, 2020, S.M. Wilson, the Joint Venture and Legacy, and Liberty participated in mediation.

64.     Despite extensive requests, Liberty has been unable to communicate any position as to why Legacy and S.M. Wilson were not insured under the Liberty Policies.

65.     Regarding the Joint Venture, Liberty has argued that it was not insured because the Liberty Policies did not insure joint ventures.

66.     The January 29, 2020 mediation was unsuccessful; however, the parties agreed to continue settlement discussions at a second mediation on April 10, 2020.

67.     On May 22, 2020, having been ignored by Helitech and Liberty, and after having afforded Helitech and Liberty myriad opportunities to protect its insureds, S.M. Wilson reached a settlement agreement with the Joint Venture and Legacy.

68.     Per the Settlement Agreement, the Joint Venture and Legacy agreed to pay $3,000,000 in exchange for S.M. Wilson releasing all claims against the Joint Venture and Legacy.

69.     Per the Settlement Agreement, the parties expressly reserved their claims against Helitech and Liberty in connection with Helitech's work performed on the Project, Helitech's and Liberty's breaches of the contract, Liberty's wrongful denial of S.M. Wilson's, the Joint Venture's, and Legacy's defense/indemnity tenders, and their respective status as insureds under the Liberty Policies.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

70.     After Settlement was reached, the Joint Venture and Legacy afforded Helitech and Liberty yet another opportunity to protect its insureds at a second mediation on September 9, 2020.

71.     The September 9 mediation was unsuccessful.

72.     On September 9, 2020, Liberty and Helitech communicated that they still did not understand the nature of the claims for coverage pursued by S.M. Wilson, the Joint Venture, and Legacy.

73.     Liberty had myriad opportunities to participate in settlement and to protect its insureds, but Liberty has breached the plain terms of the Liberty Policies by refusing to defend, indemnify, and/or provide insurance coverage to Legacy and the Joint Venture  in connection with the claims pursued by S.M. Wilson.

74.     At all times relevant to the underlying dispute and the causes of action at issue herein, Liberty's actions have been in bad faith, have constituted breaches of the Liberty Policies, and have been performed without just cause or excuse.

## <u>COUNT I</u>
## DECLARATORY JUDGMENT – DUTY TO DEFEND
## ( Joint Venture and Legacy v. Liberty )

75.     Plaintiffs Legacy and the Joint Venture incorporate herein each and every allegation set forth in paragraphs 1 through 74, above, as if fully set forth herein.

76.     Helitech was obligated under the Helitech subcontract to purchase and maintain commercial general liability coverage with minimum coverage limits of $1,000,000 (primary) and $2,000,000 (umbrella).

77.     Helitech satisfied its contractual obligations insofar as it secured primary and umbrella commercial general liability coverage limits of $1,000,000 and $5,000,000.

78.     Helitech was obligated under the Helitech subcontract to cause its primary and umbrella policies to provide coverage for Legacy and/or the Joint Venture, individually or

collectively, for all "claims caused in whole or in part by [Helitech's] negligent acts or omissions during [Helitech's] operations and completed operations."

79.     Helitech's primary and umbrella Policies both provide coverage for contractors with whom Helitech has contracted to provide "additional insured coverage with respect to liability for . . . 'property damage' . . . caused, in whole or in part, by [Helitech's] acts or omissions."

80.     Loop Lofts' claims against S.M. Wilson and, in turn, S.M. Wilson's claims against the Joint Venture and Legacy all asserted claims for damage caused, in whole or in part, by Helitech's acts or omissions with respect to its engineering/construction of the soil nail wall.

81.     Pursuant to the acts and omissions asserted by Loop Lofts and S.M. Wilson and based on the facts reasonably ascertainable by Liberty, Liberty had a duty under both Liberty Policies to defend Legacy and/or the Joint Venture, individually or collectively, against Loop Lofts' and S.M. Wilson's claims because the facts as alleged and as reasonably ascertainable by Liberty clearly established that the subject claims arose from and were connected with, in whole or in part, Helitech's acts or omissions with respect to its engineering/construction of the soil nail wall and, as such, the subject claims were potentially or possibly within the coverage provided by both Liberty Policies.

82.     The Joint Venture and Legacy have each, independently, complied with all conditions of the Liberty Policies.

83.     The Joint Venture and Legacy have each repeatedly requested that Liberty defend them from the claims of Loop Lofts and S.M. Wilson, but Liberty has refused such requests for more than two-and-a-half years and such refusal is wrongful because the claims against the Joint Venture and Legacy were at least potentially covered under the Liberty Policy.

84.     Liberty is estopped from and has waived the right to raise any defense to coverage, to litigate fact questions surrounding the underlying claim and liability for same, and to contest the

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

amount of the settlement reached between its insureds (the Joint Venture and/or Legacy) and S.M. Wilson.

85.     By breaching its clear duties to defend Legacy and/or the Joint Venture, individually or collectively, Liberty gave up its contractual right to control the defense of the underlying action, freed Legacy and the Joint Venture to negotiate a reasonable settlement with S.M. Wilson, and obligated itself to pay the entire amount of the settlement reached with S.M. Wilson.

86.     The Joint Venture and Legacy's settlement with S.M. Wilson for $3,000,000 was not the product of collusion or bad faith.

87.     This Court should enter an Order as a matter of law that Liberty had a duty to defend each of the Joint Venture and Legacy, collectively or individually, and reimburse these entities for the total value of the settlement reached ($3,000,000.00) and all reasonable fees, costs, expenses, and prejudgment interest that have been incurred/accrued beyond the original tender of July 13, 2018 through conclusion of this matter.

88.     This Court should further Order that Liberty's rejection of its duties to defend and indemnify Legacy and the Joint Venture was in bad faith and should further award to Legacy and the Joint Venture additional damages without regard for Liberty's $6,000,000 limit of primary/umbrella commercial general liability coverage.

89.     The Joint Venture and Legacy are the real parties in interest entitled to pursue this claim against Liberty and all other claims asserted in this lawsuit as their rights to this claim have not been divested and assigned to any other party but, rather, legal title to such claims remain owned by the Joint Venture and Legacy as a matter of law.

WHEREFORE Plaintiffs Joint Venture and Legacy pray that Judgment be entered in their favor and against Liberty on this Count I and further pray that this Court:

a.      Declare and adjudge that Liberty had a duty to defend each of the Joint Venture and Legacy, collectively or individually, against the claims asserted by Loop Lofts and S.M. Wilson;

13

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

b.      Declare and adjudge that Liberty has wrongfully refused to defend each of the Joint Venture and Legacy, collectively or individually, against the claims asserted by Loop Lofts and S.M. Wilson;

c.      Declare and adjudge that Liberty is obligated to and shall reimburse each of the Joint Venture and Legacy, collectively or individually, for the entirety of the $3,000,000.00 settlement reached with S.M. Wilson and for these entities' reasonable fees, costs, and expenses incurred in defense against the claims asserted by Loop Lofts and S.M. Wilson, as well as the reasonable fees, costs, and expenses incurred in the bringing of this action against Liberty;

d.      Declare and adjudge that Liberty's rejection of its duty to defend each of the Joint Venture and Legacy was in bad faith and award to Liberty and the Joint Venture additional damages without regard for Liberty's $6,000,000 limit of primary/umbrella commercial general liability coverage.

e.      Declare and adjudge that Liberty is obligated to and shall pay prejudgment interest of 9% per annum, pursuant to Section 408.020 RSMo, on the entirety of the $3,000,000.00 settlement, and on all such fees, costs, and expenses accruing since the original tender of July 13, 2018, as the foregoing items are moneys due and payable per the insurance contract;

f.      Declare and adjudge that the Joint Venture and Legacy are the real parties in interest entitled to pursue this claim, and;

g.      Grant any other relief that this Court deems just and proper and equitable under the circumstances, including the award of attorney's fees, expenses, costs, and prejudgment and post judgment interest herein.

## COUNT II
## DECLARATORY JUDGMENT – DUTY TO INDEMNIFY
### (Joint Venture and Legacy v. Liberty )

90.     Plaintiffs Joint Venture and Legacy incorporate herein each and every allegation set forth in paragraphs 1 through 89, above, as if fully set forth herein.

91.     The Liberty Policies both afford insurance coverage and indemnity for contractors with whom Helitech has contracted to provide "additional insured coverage with respect to liability for . . . 'property damage' . . . caused, in whole or in part, by [Helitech's] acts or omissions."

92.     Helitech contracted with Legacy and/or the Joint Venture, individually or collectively, to provide additional insured coverage with respect to liability for property damaged caused, in whole or in part, by Helitech's acts or omissions.

93.     Loop Lofts and S.M. Wilson asserted claims against the Joint Venture and Legacy for damage sustained as a result of Helitech's negligent acts or omissions in engineering and constructing a soil nail wall on the Project.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

94.     Because Helitech contracted with each of the Joint Venture and/or Legacy, collectively or individually, to provide additional insured coverage for all claims caused in whole or in part by Helitech's negligent acts or omission and because the Loop Lofts and S.M. Wilson claims against the Joint Venture and Legacy were for damage caused in whole or in party by Helitech's negligent acts or omissions, the claims asserted against the Joint Venture and Legacy by Loop Lofts and S.M. Wilson are covered by both of the Liberty Policies.

95.     The coverage owed by Liberty to Legacy and/or the Joint Venture, collectively or individually, under the Liberty Policies is not disclaimed by an exclusion or other limitation in either of the Liberty Policies.

96.     Liberty has a duty to indemnify the Joint Venture and/or Legacy, individually or collectively, for the S.M. Wilson and Loop Lofts claims up to the applicable limits of coverage under the Liberty policies, which is $6,000,000, not-inclusive of defense fees, costs, expenses, and pre-judgment interest, all such items being additionally covered under the Liberty Policies.

97.     The Joint Venture and Legacy have each, independently, complied with all conditions under the Liberty Policies.

98.     The Joint Venture and Legacy have each repeatedly requested that Liberty indemnify them for the claims of Loop Lofts and S.M. Wilson, but Liberty has refused such requests for more than two-and-a-half years and such refusal is wrongful because the claims against the Joint Venture and Legacy are covered under the Liberty Policies.

99.     Liberty is estopped from raising any defense to coverage and/or has waived the right to assert any coverage defenses by its repeated failure to defend and indemnify the Joint Venture and Legacy.

100.     By breaching its clear duties to defend and indemnify Legacy and the Joint Venture, Liberty is liable for all damages reasonably flowing from the breach, gave up its contractual right to

control the defense of the underlying action, freed Legacy and the Joint Venture to negotiate a reasonable settlement with S.M. Wilson, and obligated itself to pay the entire amount of the settlement.

101.    The Joint Venture and Legacy's settlement with S.M. Wilson for $3,000,000 was not the product of collusion or bad faith.

102.    This Court should enter an Order as a matter of law that Liberty had a duty to defend and indemnify each of the Joint Venture and/or Legacy, collectively or individually, and Order Liberty to reimburse these entities for the total value of the settlement reached ($3,000,000.00) and all reasonable fees, costs, expenses, and prejudgment interest that have been incurred/accrued beyond the original tender of July 13, 2018 through conclusion of this matter.

103.    This Court should further Order that Liberty's rejection of its duties to defend and indemnify Legacy and the Joint Venture was in bad faith and should further award to Legacy and the Joint Venture additional damages without regard for Liberty's $6,000,000 limit of primary/umbrella commercial general liability coverage.

104.    The Joint Venture and Legacy are the real parties in interest entitled to pursue this claim against Liberty and all other claims asserted in this lawsuit as their rights to this claim have not been divested and assigned to any other party but, rather, legal title to such claims remain owned by the Joint Venture and Legacy as a matter of law.

WHEREFORE Plaintiffs Joint Venture and Legacy pray that Judgment be entered in their favor and against Liberty on this Count II and further pray that this Court:

a.      Declare and adjudge that Liberty had a duty to indemnify each of the Joint Venture and/or Legacy, collectively or individually, for the claims asserted by Loop Lofts and S.M. Wilson;

b.      Declare and adjudge that Liberty has wrongfully refused to indemnify each of the Joint Venture and/or Legacy, collectively or individually, for the claims asserted by Loop Lofts and S.M. Wilson;

c.      Declare and adjudge that Liberty is obligated to and shall reimburse each of the Joint Venture and/or Legacy, collectively or individually, for the entirety of the $3,000,000.00 settlement reached with S.M. Wilson and for these entities' reasonable fees, costs, and expenses incurred in

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

defense against S.M. Wilson's claims, as well as the reasonable fees, costs, and expenses incurred in the bringing of this action against Liberty;

d.      Declare and adjudge that Liberty's rejection of its duty to indemnify each of the Joint Venture and/or Legacy, individually or collectively, was in bad faith and award to Liberty and the Joint Venture additional damages without regard for Liberty's $6,000,000 limit of primary/umbrella commercial general liability coverage.

e.      Declare and adjudge that Liberty is obligated to and shall pay prejudgment interest of 9% per annum, pursuant to Section 408.020 RSMo, on the entirety of the $3,000,000.00 settlement, and on all such fees, costs, and expenses accruing since the original tender of July 13, 2018, as the foregoing items are moneys due and payable per the insurance contract;

f.      Declare and adjudge that the Joint Venture and Legacy are the real parties in interest entitled to pursue this claim, and;

g.      Grant any other relief that this Court deems just and proper and equitable under the circumstances, including the award of attorney's fees, expenses, costs, and prejudgment and post judgment interest herein.

## COUNT III
## BREACH OF CONTRACT
### (Joint Venture and Legacy v. Liberty )

105.    Plaintiffs Joint Venture and Legacy incorporate herein each and every allegation set forth in paragraphs 1 through 104, above, as if fully set forth herein.

106.    The Liberty Policies each afford insurance coverage and indemnity for contractors with whom Helitech has contracted to provide "additional insured coverage with respect to liability for . . . 'property damage' . . . caused, in whole or in part, by [Helitech's] acts or omissions."

107.    Helitech contracted with Legacy and/or Joint Venture, individually or collectively, to provide additional insured coverage with respect to liability for property damaged caused, in whole or in part, by Helitech's acts or omissions.

108.    S.M. Wilson asserted claims against the Joint Venture and Legacy for damage sustained as a result of Helitech's negligent acts or omissions in engineering and constructing a soil nail wall on the Project.

109.    Because Helitech contracted with each of the Joint Venture and/or Legacy, collectively or individually, to provide additional insured coverage for all claims caused in whole or in party by Helitech's negligent acts or omission and because S.M. Wilson's claims against the Joint

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

Venture and Legacy were for damage caused in whole or in party by Helitech's negligent acts or omissions, the claims asserted against the Joint Venture and/or Legacy are covered by both Liberty Policies.

110.    Legacy and/or the Joint Venture, individually or collectively, are "additional insureds" under both Liberty Policies.

111.    The Joint Venture and Legacy have each, independently, complied with all conditions under the Liberty Policies.

112.    The Joint Venture and Legacy have each repeatedly requested that Liberty defend and indemnify them in connection with S.M. Wilson's claims, but Liberty has breached its policies of insurance by refusing such requests for more than two-and-a-half years.

113.    Liberty's myriad wrongful breaches of the Policy contracts with the Joint Venture and Legacy makes Liberty liable for damages reasonably flowing from the breach and, by wrongfully breaching its contract obligations, Liberty gave up its contractual right to control the defense of the underlying action, Liberty freed the Joint Venture and Legacy to negotiate a reasonable settlement with S.M. Wilson, and Liberty is now obligated to pay the entire amount of the settlement reached by the insureds absent collusion or bad faith.

114.    The Joint Venture and Legacy's settlement with S.M. Wilson for $3,000,000 was not the product of collusion or bad faith.

115.    The Joint Venture and Legacy have both been damaged by Liberty's various breaches of the contracts of insurance.

116.    The Joint Venture and Legacy are the real parties in interest entitled to pursue this claim against Liberty and all other claims asserted in this lawsuit as their rights to this claim have not been divested and assigned to any other party but, rather, legal title to such claims remain owned by the Joint Venture and Legacy as a matter of law.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

WHEREFORE Plaintiffs Joint Venture and Legacy pray that Judgment be entered in their favor and against Liberty on this Count III and further pray for their damages, including recovery of the entirety of the $3,000,000.00 settlement reached with S.M. Wilson and the reasonable fees, costs, and expenses incurred in defense against S.M. Wilson's claims, as well as the reasonable fees, costs, and expenses incurred in the bringing of this action against Liberty; for prejudgment interest of 9% per annum, pursuant to Section 408.020 RSMo, on the entirety of the $3,000,000.00 settlement, and on all such fees, costs, and expenses accruing since the original tender of July 13, 2018, as the foregoing items are moneys due and payable per the insurance contract, and; for such other and further relief deemed just and proper and equitable under the circumstances, including the award of attorney's fees, expenses, costs, and prejudgment and post judgment interest herein.

## COUNT IV
### VEXATIOUS REFUSAL
### (Joint Venture and Legacy v. Liberty )

117.    Plaintiffs Joint Venture and Legacy incorporate herein each and every allegation set forth in paragraphs 1 through 116, above, as if fully set forth herein.

118.    Liberty  had a contractual duty under both Liberty Policies to defend and indemnify the Joint Venture and/or Legacy, collectively or individually, against S.M. Wilson's claims, but has refused and continues to refuse to do so.

119.    Legacy and the Joint Venture are each individually and/or collectively "additional insureds" under both Liberty Policies

120.    The Joint Venture and Legacy have each, independently, complied with all conditions under the Liberty Policies.

121.    The Joint Venture and Legacy have each repeatedly requested that Liberty defend and indemnify them in connection with S.M. Wilson's claimed loss, but Liberty has breached its policies of insurance by refusing such requests for more than two-and-a-half years.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

122.     Liberty's myriad and repeated denials of S.M. Wilson's claimed loss and failures and refusal to defend and indemnify the Joint Venture and Legacy under the Liberty policies have been and continue to be vexatious, unreasonable, and without reasonable cause or excuse.

123.     Therefore, the Joint Venture and Legacy are entitled to statutory penalties and reasonable attorney's fees pursuant to Section 375.420 RSMo.

124.     The Joint Venture and Legacy are the real parties in interest entitled to pursue this claim against Liberty and all other claims asserted in this lawsuit as their rights to this claim have not been divested and assigned to any other party but, rather, legal title to such claims remain owned by the Joint Venture and Legacy as a matter of law.

WHEREFORE Plaintiffs Joint Venture and Legacy pray that Judgment be entered in their favor and against Liberty on this Count IV and further pray for their damages, including recovery of the entirety of the $3,000,000.00 settlement reached with S.M. Wilson and the reasonable fees, costs, and expenses incurred in defense against S.M. Wilson's claims, as well as the reasonable fees, costs, and expenses incurred in the bringing of this action against Helitech; for prejudgment interest of 9% per annum, pursuant to Section 408.020 RSMo, on the entirety of the $3,000,000.00 settlement, and on all such fees, costs, and expenses accruing since the original tender of July 13, 2018, as the foregoing items are moneys due and payable per the insurance contract; for statutory penalties pursuant to Section 375.420 RSMo of twenty percent of the first fifteen hundred dollars of the full settlement paid, and ten percent of the amount of settlement paid in excess of fifteen hundred dollars, and for such other and further relief deemed just and proper and equitable under the circumstances, including the award of attorney's fees, expenses, costs, and prejudgment and post judgment interest herein.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

**COUNT V**
**BAD FAITH**
**(Joint Venture and Legacy v. Liberty)**

125.     Plaintiffs Joint Venture and Legacy incorporate herein each and every allegation set forth in paragraphs 1 through 124, above, as if fully set forth herein.

126.     Liberty insured the Joint Venture and/or Legacy, individually or collectively, under the Liberty Policies.

127.     Both Liberty Policies were in full force and effect at all times relevant to S.M. Wilson's claims.

128.     Liberty had the right and obligation to contest or settle S.M. Wilson's claims against the Joint Venture and/or Legacy, collectively or individually, but refused to do so.

129.     Liberty reserved the exclusive right to contest or settle S.M. Wilson's claims against the Joint Venture and/or Legacy, collectively or individually.

130.     Liberty prohibited the Joint Venture and/or Legacy, collectively or individually, from voluntarily assuming any liability or settling any claims without consent.

131.     Liberty is guilty of fraud and bad faith in refusing to settle S.M. Wilson's claims against the Joint Venture and/or Legacy within the limits of the Liberty Policies.

132.     Liberty had a contractual duty to investigate S.M. Wilson's claims against the Joint Venture and/or Legacy, to protect and defend these entities against and settle claims arising from Helitech's work.

133.     On June 21, 2018, S.M. Wilson sent a draft petition and settlement demand to the Joint Venture and Legacy demanding $1,459,106.42.

134.     The June 21, 2018 demand was sent to Liberty, along with a tender of the Joint Venture and Legacy's defense and indemnity, but Liberty failed to respond to this letter.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

135.   On August 21, 2018, counsel for the Joint Venture and Legacy sent the demand to Liberty again but, again, Liberty failed to respond.

136.   On December 6, 2018, counsel for the Joint Venture and Legacy sent the demand and tender letter to Liberty once again.

137.   On January 18, 2019, Liberty finally responded to counsel for the Joint Venture and Legacy confirming that it had received each of the July 13, August 2, and December 6, 2018 letters and confirming, but provided no explanation for its bad faith conduct in failing to conduct any investigation of the claim between July 2018 and January 2019.

138.   In the January 18, 2019 letter, Liberty communicated it was "investigating and evaluating [the] tender and will provide [its] formal response within forty five days."

139.   Liberty acted in bad faith by failing to provide a response within 45 days, as promised.

140.   On June 10, 2019, S.M. Wilson issued to the Joint Venture and Legacy a settlement demand of $1,621,229.36.

141.   The Joint Venture and Legacy made numerous efforts to engage Liberty to negotiate resolution of the June 10 demand, but Liberty refused to discuss settlement.

142.   On August 13, 2019, S.M. Wilson sent another time-limited settlement demand to the Joint Venture and Legacy, this time demanding $3 million.

143.   On September 3, 2019, Liberty was sent S.M. Wilson's new demand.

144.   On September 19, 2019, the Joint Venture and Legacy demanded by certified mail a defense and indemnification from Liberty for S.M. Wilson's claim.

145.   In a letter dated September 30, 2019, more than fifteen (15) months after having been placed on notice of S.M. Wilson's claims, Liberty stated that it did not have sufficient information to respond to S.M. Wilson's demand by its October 1, 2019 deadline.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

146.     In its September 30, 2019 letter, Liberty failed to request any documents or itemize any pieces of information it required to enable it to respond to the demand in a timely manner.

147.     In the time between the original notice and the date of its September 30, 2019 letter, Liberty had not once requested documents or information it required to enable it to evaluate coverage or to respond to the demand against the Joint Venture and Legacy.

148.     On January 29, 2020, Liberty took the unsupported position that the Joint Venture and Legacy were not insured under the Liberty Policies.

149.     At no point between July of 2018 and present has Liberty explained its position that Legacy is not insured under the Liberty Policies.

150.     After Settlement was reached, the Joint Venture and Legacy afforded Liberty yet another opportunity to protect the Joint Venture and Legacy on September 9, 2020.

151.     On September 9, Liberty communicated that it still did not understand the nature of the claims for coverage pursued by S.M. Wilson, the Joint Venture, and Legacy and that it lacked necessary information to evaluate these claims.

152.     Liberty had ample opportunity to investigate the claims against its insureds, to evaluated the claims for coverage, and to participate in settlement to protect its insureds, but Liberty failed to take advantage of these opportunities and breach its duty of good faith to its insureds.

153.     Liberty acted wrongly, breached the contracts of insurance, and committed bad faith in that, among other failures, it:

a.     Did not timely accept offers to settle claims against its insureds, the Joint Venture and/or Legacy, within the limit of liability coverage available to either or both of these entities;

b.     Did not adequately, promptly, and/or reasonably investigate the claims against its insureds;

c.     Refused to negotiate or to make a good faith attempt to settle S.M. Wilson's claims against its insureds;

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

    d.    Placed its financial interest ahead of its insureds in violation of its obligations to its insureds and by not giving at least equal consideration to the interests of its insureds by refusing to timely accept settlement demands against its insureds;

    e.    Failed to timely communicate with its insureds about the settlement demands pending against them;

    f.    Failed to timely communicate with its insureds about their claims for defense and indemnity;

    g.    Failed to comply with Missouri's Unfair Claims Practices Act, and;

    h.    Upon information and belief, failed to follow Liberty's claims manuals, standards, policies, guidelines, and procedures in regard to good faith claims handling;

154.    At all times relevant to the underlying dispute and the causes of action at issue herein, Liberty's actions have been in bad faith, have constituted breaches of the Liberty Policies, and have been performed without just cause or excuse.

155.    Liberty intentionally disregarded the financial interest of the Joint Venture and Legacy in the hope of escaping the responsibility imposed upon it by the Liberty Policies.

156.    Liberty is now liable up to and over and above the limit of liability coverage in the Liberty Policies in refusing in bad faith to settle the claims against its insureds within its policy limits when it had a chance to do so.

157.    As a direct and proximate result of Liberty's bad faith conduct, the Joint Venture and/or Legacy, individually or collectively, have been damaged in that they were required to expend monetary compensation and to incur costs, expenses, and attorney's fees in settlement of claims that should have been borne by Liberty.

158.    As a direct and proximate result of Liberty's bad faith conduct, the Joint Venture and/or Legacy, individually or collectively, seek fair and reasonable damages from Liberty, including the full amount of the $3,000,000 expended in settlement of S.M. Wilson's claims, plus their expenses, costs, attorney's fees, pre-judgment interest, post-judgment interest, all personal damages

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

reasonable in bad faith as the jury shall determine  and, at such future time as leave of court may be secured pursuant to Section 510.261 RSMo, punitive damages.

WHEREFORE Plaintiffs Joint Venture and Legacy pray that Judgment be entered in their favor and against Liberty on this Count V and further prays for its damages, including recovery from Liberty of the entirety of the $3,000,000.00 paid in settlement of the claims asserted against the Joint Venture and Legacy; for the reasonable attorney's fees, costs, and expenses incurred in defense of the underlying claims against the Joint Venture and Legacy and in the prosecution of the instant action; for all additional damages irrespective of the limits of liability coverage in the Liberty Policies sustained by Legacy and/or the Joint Venture as a proximate result of Liberty's bad faith conduct; for prejudgment interest of 9% per annum, pursuant to Section 408.020 RSMo, on the entirety of the $3,000,000.00 settlement, and on all such fees, costs, and expenses accruing since the original tender of July 13, 2018, as the foregoing items are moneys due and payable per the insurance contract; in the event proof may be presented in the future and this Court may grant leave of Court for Legacy and the Joint Venture to assert a claim of punitive damages pursuant to Section 510.261 RSMo, for a further award of punitive damages in an appropriate amount to punish Liberty for its deliberate and flagrant disregard for the rights of the Joint Venture and Legacy, and; for such other and further relief deemed just and proper and equitable under the circumstances, including the award of attorney's fees, expenses, costs, and prejudgment and post judgment interest herein.

## DEMAND FOR JURY TRIAL

159.    Plaintiffs demand a trial by jury on all issues raised in this Petition for Damages that may be tried to a jury.

Electronically Filed - City of St. Louis - February 17, 2021 - 03:22 PM

Respectfully submitted,

**FOLAND, WICKENS, ROPER, HOFER & CRAWFORD, P.C.**

_____/s/ Scott D. Hofer_____

| Scott D. Hofer | MO #44587 |
| Christopher R. Mirakian | MO #61178 |

1200 Main St., Suite 2200
Kansas City, MO 64105
(816) 472-7474
(816) 472-6262 (fax)
shofer@fwpclaw.com
cmirakian@fwpclaw.com

_Attorneys for Plaintiffs_